UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE NAJERA,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>STU SHERMAN,<br><br>　　　　　　　　　Respondent. | Case No.: 15-cv-2444 BAS (JLB)<br><br>**REPORT AND RECOMMENDATION DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>[ECF No. 1] |

## I. INTRODUCTION

Petitioner Jose Najera, a state prisoner proceeding *pro se* and *in forma pauperis*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"), challenging his San Diego County Superior Court conviction of murder in case number SCN304993. (ECF No. 1 at 1.)[1]

The Court submits this Report and Recommendation to United States District Judge Cynthia Bashant pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the Local Rules of Practice of the United States District Court for the Southern District of California. After a thorough review of the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the lodgments, the record, and all the supporting documents submitted by both parties, and for the reasons set forth below, the Court **RECOMMENDS** the Petition be **DENIED**.

---

[1] Page numbers for docketed materials cited herein refer to those imprinted by the court's electronic case filing system.

## II. FACTUAL BACKGROUND

The facts that follow are taken from the California Court of Appeal opinion in *People v. Najera*, No. D063875 at 3–4 (Cal. Ct. App. Nov. 17, 2014). This Court gives deference to state court findings of fact and presumes them to be correct. *See* 28 U.S.C. § 2254(e)(1); *see also Parke v. Raley*, 506 U.S. 20, 35–36 (1992) (holding inferences properly drawn from state court findings of fact are entitled to statutory presumption of correctness).

> On the morning of April 25, 2007, Najera was driving a stolen car. He had two passengers: his friend, David Lopez, and Lopez's girlfriend, Rachel Gaxiola. At approximately 9:00 a.m., San Diego County Sheriff's deputies attempted to stop Najera's car, having received a report it was stolen. Najera initially pulled the car over to the side of the road but then made a sharp U-turn and rapidly accelerated; Najera narrowly missed oncoming traffic and drove on the wrong side of a divided roadway at speeds up to 80 miles per hour[] for just under a minute. The chase finally ended when Najera collided head-on with a 76-year-old motorist, Jean Cooke.
>
> During the pursuit, Gaxiola asked Najera if she could get out of the car, and both she and Lopez removed their seatbelts. At one point, Lopez opened his door.[2] All three occupants were still in the car, however, when it collided with Cooke's car.
>
> All four people involved in the collision were taken to the hospital, where Lopez was pronounced dead. Gaxiola had several severe bone fractures; she spent the next two and a half months in the hospital and was still in "constant pain" at the time of the trial. Cooke also suffered several broken bones and a collapsed lung; she still experienced symptoms of her injuries, including difficulty standing, at the time of trial.

---

[2] Additionally, one of the sheriff's deputies involved with the investigation testified that, in the hospital, Gaxiola had told him that as Najera made his initial U-turn, Lopez had asked to be let out of the car and had attempted to exit but was pulled back by Najera. Other deputies also reported seeing Lopez's door open and his arm and leg hang out of the car while Najera made his U-turn. Gaxiola testified that she had no memory of Lopez asking to get out of the car, of Najera pulling Lopez back into the car, or of making a statement to investigators while in the hospital.

> Najera was treated for several fractures and lacerations. Najera admitted to doctors at the hospital that he had used methamphetamine the evening before the collision and heroin approximately five hours before the collision. These admissions were confirmed by later blood tests and consistent with the fact that a usable amount of methamphetamine was found in his pants pocket.

(ECF No. 8-7 at 3–4.)

### III. PROCEDURAL BACKGROUND

On February 26, 2013, the District Attorney charged Petitioner with the following counts: Murder in violation of California Penal Code § 187(a) (count one); gross vehicular manslaughter while intoxicated in violation of California Penal Code § 191.5(c)(1) (count two); driving under the influence causing injury in violation of California Vehicle Code § 23153(a) (count three); evading a peace officer causing death in violation of California Vehicle Code § 2800.3(b) (count four); unlawful taking and driving vehicle in violation of California Vehicle Code § 10851(a) (count five); and possession of a controlled substance in violation of California Health and Safety Code § 11377(a) (count six). (ECF No. 8-1 at 19–24.) The District Attorney further alleged under count two that Petitioner proximately caused bodily injury or death to more than one victim (here, Jean Cooke and Rachel Gaxiola) in violation of California Vehicle Code § 23558. (*Id.* at 20.) The District Attorney further alleged under counts three and four that Petitioner personally inflicted great bodily injury upon Jean Cooke and Rachel Gaxiola in violation of California Penal Code § 12022.7(a). (*Id.* at 20–21.)

Petitioner proceeded to a jury trial in the San Diego County Superior Court in Case No. SCN304993. On March 4, 2013, the jury found Petitioner guilty on all six counts, including the special allegations. (*Id.* at 108–24.) The court sentenced Petitioner to a total of 45 years to life.[3] (ECF No. 8-7 at 2.)

---

[3] Fifteen years doubled for strike prior on count one, three years doubled for strike prior on count five to run consecutively with count one, four consecutive one-year terms for Petitioner's prison priors, and five years for a serious felony prior. (ECF No. 8-7 at 2 n.1.)

Petitioner timely filed an appeal with the California Court of Appeal on May 6, 2013, in Case No. D063875. (ECF No. 8-1 at 163.) Among other claims, Petitioner asserted that former California Penal Code § 22(b)[4] is designed solely to exclude relevant voluntary intoxication evidence as it relates to the mental state of implied malice aforethought in violation of due process. (ECF No. 8-5 at 28–56.) The California Court of Appeal affirmed Petitioner's conviction on August 27, 2014. (ECF No. 8-7 at 1–15.)

Petitioner timely filed a petition for review in the Supreme Court of California on October 2, 2014. (ECF No. 8-8.) He again raised the claim that former § 22(b) is designed solely to exclude relevant voluntary intoxication evidence as it relates to the mental state of implied malice aforethought in violation of due process. (ECF 8-8 at 20–26.) The Supreme Court of California summarily denied the petition for review on November 12, 2014, in Case No. S221710. (ECF No. 8-9 at 1.)

Petitioner timely filed the instant Petition on October 28, 2015. (ECF No. 1.) Judge Cynthia Bashant granted Petitioner's motion to proceed *in forma pauperis* on December 1, 2015. (ECF No. 3.) Respondent filed an answer to the Petition on February 8, 2016. (ECF No. 7.) Petitioner had until March 11, 2016, to file a traverse, however, Petitioner did not file a traverse. (ECF No. 5 at 3.)

## IV. SCOPE OF REVIEW

The Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997). Under AEDPA, a habeas petition will not be granted unless that adjudication: (1) resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law; (2) or resulted in a decision that was based on an unreasonable

---

[4] Former California Penal Code § 22(b), as amended in 1995, is currently codified as California Penal Code § 29.4(b). For the sake of consistency with Petitioner's argument and the state court documents, the Court refers to the statute as "former § 22(b)." All further statutory references are to the California Penal Code unless otherwise stated.

determination of the facts in light of the evidence presented at the state court proceeding. *See* 28 U.S.C. § 2254(d); *see also Early v. Packer*, 537 U.S. 3, 7–8 (2002).

For the purposes of the first prong of the test, clearly established federal law, under 28 U.S.C. § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 72 (2003). The Court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*.

As it relates to an "unreasonable determination of the facts" under the second prong, the Court presumes factual findings made by the state court to be correct and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see Lambert v. Blodgett*, 393 F.3d 943, 971–72 (9th Cir. 2004). Clear and convincing means that the Court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).

A federal court is not called upon to decide whether it agrees with the state court determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991).

## V. DISCUSSION

Although divided into four sections labeled "claims,"[5] Petitioner relies on a single argument that former § 22(b) is designed solely to exclude relevant voluntary intoxication evidence on the mental state of implied malice aforethought in violation of due process. As such, the Court addresses the Petition as a single claim.

Specifically, Petitioner asserts the 1995 amendment of former § 22(b) violates due process because it "[does] not redefine the mental element of implied malice for murder" but instead excludes relevant exculpatory evidence. (ECF No. 1 at 6.) Prior to 1995, former §22 allowed for the introduction of voluntary intoxication evidence for specific intent crimes, which, at the time, included implied malice. *See People v. Whitfield*, 7 Cal. 4th 437, 446 (1994) ("Section 22, subdivision (b), provides: 'Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, premeditated, deliberated, or harbored malice aforethought, when a specific intent crime is charged.'"). In 1995, shortly after *Whitfield*, the California legislature enacted several changes to former § 22, including the addition of the word "express" in front of "malice aforethought." *See* Act of Jan. 19, 1995, ch. 793, § 1, 1995 Cal. Legis. Serv. (West). After the 1995 change, former § 22 read (and continues to read, although renumbered as § 29.4 in 2013) in relevant part,

---

[5] In his Petition, Petitioner makes this single argument under four claims headings: (1) "Section 22, subdivision (b) as amended in 1995 was solely designed to exclude relevant exculpatory evidence in violation of due process"; (2) "1872 enactment of Section 22 and pertinent amendments"; (3) "Section 22, subdivision (b) was designed to allow voluntary intoxication as relevant exculpatory evidence on certain mental states and the 1995 amended section 22, subdivision (b) was designed to exclude voluntary intoxication as relevant exculpatory evidence on mental state of implied malice aforethought"; and (4) "Section 22, subdivision (b) as amended in 1995 does not redefine the mental state of implied malice aforethought." (ECF No. 1 at 6–12.)

> (a) No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition. Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states for the crimes charged, including, but not limited to, purpose, intent, knowledge, premeditation, deliberation, or malice aforethought, with which the accused committed the act.
>
> (b) Evidence of voluntary intoxication is admissible solely on the issue of whether or not the defendant actually formed a required specific intent, or, when charged with murder, whether the defendant premeditated, deliberated, or harbored express malice aforethought.

Cal. Penal Code § 22 (West 1995).

As stated above, Petitioner argues that former § 22(b) is designed solely to exclude relevant voluntary intoxication evidence on the mental state of implied malice aforethought in violation of due process. Although Petitioner does not specifically cite to federal case law in the Petition, the Court presumes Petitioner relies on Justice Ginsberg's concurring opinion in *Montana v. Egelhoff*, 518 U.S. 37, 57 (1996) (Ginsberg, J., concurring), to attack the constitutionality of former § 22.[6] Respondent contends that former § 22(b) as amended is a redefinition of a criminal offense and thus does not violate Petitioner's constitutional rights. (ECF No. 7-1 at 4–5.)

Because Petitioner raised this claim in his direct appeal to the California Court of Appeal (ECF 8-5 at 42–52) and in his petition for review to the California Supreme Court (ECF No. 8-8 at 18–25), and because the California Supreme Court denied the petition without comment (ECF No. 8-9), this Court "looks through" to the Court of Appeal's decision. The California Court of Appeal denied relief to Petitioner based on the following rationale:

---

[6] The basis for this conclusion is that Petitioner's arguments track his argument to the California Court of Appeal in his direct appeal of his conviction, in support of which Petitioner cites Justice Ginsberg's concurring opinion. (ECF No. 8-5 at 28–30.)

Najera argues that former section 22 unconstitutionally excludes exculpatory evidence and prevented him from showing that, in light of his intoxication, he was not acting with the implied malice needed to prove second degree murder. We find no defect in former section 22.

Najera relies on *Montana v. Egelhoff* (1996) 518 U.S. 37 (*Egelhoff*), where the United States Supreme Court upheld a Montana law substantially similar to former section 22. In her controlling concurring opinion, Justice Ginsberg reasoned that a law barring evidence of voluntary intoxication could be unconstitutional if it merely sought to exclude relevant evidence, but it would not be if it redefined the mens rea requirement of crimes. She found the Montana law did the latter as it was found in Montana's criminal, as opposed to evidentiary, code sections, and because it "'extract[s] the entire subject of voluntary intoxication from the mens rea inquiry.'" (*Egelhoff*, at pp. 57–58 (conc. opn. of Ginsberg, J.).) Justice Ginsberg noted that such a redefinition was within the Legislature's power and did not relieve the prosecution of their burden to prove a mental state, as it still required them to prove either "(1) the defendant caused the death of another with actual knowledge or purpose, *or* (2) that the defendant killed 'under circumstances that would otherwise establish knowledge or purpose "but for" [the defendant's] voluntary intoxication.'" (*Id.* at p. 58 (conc. opn. of Ginsberg, J.).)

As the court in *People v. Timms* (2007) 151 Cal.App.4th 1292 determined, former section 22, like the Montana statute, is consistent with due process and the requirements of *Egelhoff*. "Section 22 does not appear in the Evidence Code, it appears in the Penal Code under the 'Preliminary Provisions,' along with statutes defining and setting forth the kinds and degrees of crimes and their punishment (§§ 16-19.8), the requirement of act and intent or negligence (§ 20), the elements of attempt (§ 21a), etc. Since 1872, the first sentence of section 22 (now at subdivision (a)) has declared the policy of this state that an act is not less criminal because the actor committed it while voluntarily intoxicated. This means that, with respect to the same conduct, an intoxicated person shoulders the same criminal responsibility as a sober person. The next sentence declares the substantive law that voluntary intoxication is not available to a defendant as a basis for a diminished capacity defense. Subdivision (b) of section 22 establishes, and limits, the exculpatory effect of voluntary intoxication on the required mental state for a particular crime. It permits evidence of voluntary intoxication for limited exculpatory purposes on the issue of specific intent or, in murder cases, deliberation, premeditation and express malice aforethought. The absence of implied malice form the exceptions listed in subdivision (b) is itself a policy statement

> that murder under an implied malice theory comes with the general rule of subdivision (a) such that voluntary intoxication can serve no defensive purpose. In other words, section 22, subdivision (b) is not 'merely an evidentiary prescription'; rather, it 'embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions.' (*Egelhoff*, *supra*, 518 U.S. at p. 57 (conc. opn. of Ginsburg, J.).) In short, voluntary intoxication is irrelevant to proof of the mental state of implied malice or conscious disregard. Therefore, it does not lessen the prosecution's burden of proof or prevent a defendant from presenting all relevant defensive evidence." (*People v. Timms*, *supra*, at p. 1300.)
>
> We agree with the court in *People v. Timms* as well as the court in *People v. Martin* (2000) 78 Cal.App.4th 1107, 1117, which reached the same conclusion: former section 22 is a legitimate exercise of the Legislature's authority to redefine the elements of crimes and not an attempt to impermissibly exclude exculpatory evidence. Accordingly, former section 22 does not infringe on the defendant's right to due process.

(ECF No. 8-7 at 8–10.)

The Supreme Court has not directly addressed whether former § 22(b) violates a defendant's rights under the Due Process Clause. However, in *Montana v. Egelhoff*, the Court analyzed a Montana state law, similar to former § 22(b), which established that voluntary intoxication "may not be taken into consideration in determining the existence of a mental state that is an element of a criminal offense." 518 U.S. 37, 57 (1996) (quoting Mont. Code Ann. § 45–2–203 (1995)). The Court held that statute does not violate the Due Process Clause. 518 U.S. at 39–40, 58.

In *Egelhoff*, Montana Sheriffs found Egelhoff in the backseat of a vehicle in which two other people were shot dead. *Id.* at 40. More than one hour later, Egelhoff's blood-alcohol content registered at 0.36. *Id.* He was convicted of deliberate homicide after the court instructed the jury to disregard evidence of his voluntarily intoxicated condition as it related to the *mens rea* element of the crime. *Id.* at 41. The Supreme Court of Montana reversed his conviction, reasoning that Montana Code Annotated § 45–2–203 ("Montana statute") unconstitutionally prevented Egelhoff from presenting "all relevant evidence to

rebut the State's evidence."[7] *Id.* (quoting *State v. Egelhoff*, 272 Mont. 114, 125 (1995)). The Supreme Court of the United States, however, rejected that reasoning and reversed the Supreme Court of Montana in a fractured opinion. *See id.* at 53, 58 (Ginsberg, J., concurring) (plurality). Noting that the right to present relevant evidence for a defense is not absolute, *id.* at 42 (plurality), the Supreme Court held that the exclusion of exculpatory voluntary intoxication evidence does not offend a "fundamental principle of justice" protected under the Due Process Clause. *See Egelhoff*, 518 U.S. at 44–47 (plurality) & 58 (Ginsberg, J., concurring).

Justice Scalia, writing for the four-justice plurality, found that a state statute that excludes the introduction of exculpatory voluntary intoxication evidence does not necessarily violate a defendant's rights under the Due Process Clause. The plurality reasoned that "the introduction of relevant evidence can be limited by a state for a 'valid' reason." *Id.* at 53. If a defendant wishes to challenge a state's valid reason, the defendant must show that the exclusion "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* at 58 (quoting *Patterson v. New York*, 432 U.S. 197, 201–02 (1977)). Justice Scalia reasoned that because numerous states have either maintained or resuscitated the "old common-law" rule that a state may preclude exculpatory voluntary intoxication evidence, the exclusion of such evidence does not offend a "fundamental principle of justice." *See id.* at 47–48 (noting that "one-fifth of the States either never adopted the 'new common-law' rule at issue here or have recently abandoned it"). For the plurality, the combination of historical precedent and valid state reasons indicated that the Montana statute did not violate the Due Process Clause. *See id.* at 49–50 (citing the frequency of violent crimes committed by drunken offenders, specific

---

[7] Montana Code Annotated § 45-2-203 states, "A person who is in an intoxicated condition is criminally responsible for the person's conduct, and an intoxicated condition is not a defense to any offense and may not be taken into consideration in determining the existence of a mental state that is an element of the offense unless the defendant proves that the defendant did not know that it was an intoxicating substance when the defendant consumed, smoked, sniffed, injected, or otherwise ingested the substance causing the condition."

deterrence, and comportment with society's moral perception as "considerable justification[s]").

Justice Ginsberg, in her concurrence, agreed with the plurality that the Montana statute does not offend a "fundamental principle of justice." *See id.* at 58 (Ginsberg, J., concurring) (citing the same language from *Patterson* on which the plurality relied). However, Justice Ginsberg's analytical framework diverged slightly from the plurality's reasoning. Justice Ginsberg's analysis focused on whether the statute was a rule of evidence, the effect of which was to preclude "relevant exculpatory evidence," or whether it was a substantive criminal law statute which redefined the *mens rea* requirement of the crime. *Id.* at 57. Justice Ginsberg allowed that the former might offend due process, but determined the latter would pass constitutional muster. *Id.* Justice Ginsberg held the Montana statute was not merely an evidentiary rule, but a redefining of the element of the crime at issue. "Comprehended as a measure redefining *mens rea*, § 45–2–203 encounters no constitutional shoal." *Id.* at 58. Justice Ginsberg reasoned that the Montana statute's location in the Montana Code under "General Principles of Liability" is not where one would expect to find an evidentiary prescription. *Id.* at 57 (noting adjacent provisions governing duress and entrapment). For Justice Ginsberg, this indicated that the statute is not "merely an evidentiary prescription" but an embodiment of "a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions." *Id* at 57. She further reasoned that the Montana statute is constitutional because several other courts have upheld similar statutes as "legislative redefinitions of the mental-state element." *Id.* at 59. Specifically, she found that "the Montana law is no less tenable under the Federal Constitution than are laws, with no significant difference in wording, upheld in sister States." *Id.* at 59–60.

Justice Ginsberg additionally opined that the Montana statute is constitutional because it does not excuse the prosecution from proving a defendant's mental state. Rather, proof of the mental state—and consequently the relevance of evidence related to the mental state—is "dependent on how a State defines the offense that is charged." *Id.* at 58 (quoting

11

*Patterson*, 432 U.S. at 211 n.12). As a result, Justice Ginsberg concluded that the Montana statute does not lighten the burden of proof placed on the prosecution, but renders evidence of voluntary intoxication irrelevant to proof of *mens rea* because the Montana statute "extracts the entire subject of voluntary intoxication from the mens rea inquiry." *Id.* (citation omitted).

Reading the Petition generously, Petitioner argues that the California Court of Appeal's decision was contrary to or involved an unreasonable application of clearly established federal law because Justice Ginsberg's concurrence establishes that laws designed solely to keep out relevant exculpatory evidence violate due process and former § 22 is such a law. Therefore, to address Petitioner's argument that the California Court of Appeal's decision was contrary to or involved an unreasonable application of clearly established federal law, one must first answer the question of whether Justice Ginsberg's concurrence constitutes the holding of the *Egelhoff* decision and is therefore a governing principle of the Supreme Court.

In *Marks v. United States*, 430 U.S. 188 (1997), the Supreme Court provided guidance on how to interpret the holding of a fractured Supreme Court decision. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Id.* at 193–94. In *Egelhoff*, although a majority of the justices did not use the same analytical framework to arrive at the same conclusion, five Justices ultimately agreed that the Montana statute is constitutional because states have the power to define criminal conduct and limit the introduction of evidence with respect to that conduct. *See Egelhoff*, 518 U.S. at 38–59. As noted by Justice Scalia,

> [W]e are in complete agreement with the concurrence that § 45–2–203 "embodies a legislative judgment regarding the circumstances under which individuals may be held criminally responsible for their actions," *post*, at 2024. We also agree that the statute "'extract[s] the entire subject of voluntary intoxication from the mens rea inquiry,'" *post*, at 2024. We believe that this judgment may be implemented, and this effect achieved, with equal

>    legitimacy by amending the substantive requirements for each crime, or by simply excluding intoxication evidence from the trial. We address this as an evidentiary statute simply because that is how the Supreme Court of Montana chose to analyze it.

*Id.* at 50 n.4. Therefore, the plurality and the concurrence agree that a state may constitutionally redefine the *mens rea* element of a crime and, as a result, limit the introduction of otherwise relevant exculpatory evidence.

This Court may look to Ninth Circuit case law as "persuasive authority" to identify clearly established federal law. *See Van Tran v. Lindsey*, 212 F.3d 1143, 1154 (9th Cir. 2000); *overruled on other grounds by Lockyer,* 538 U.S. at 75–76. The Ninth Circuit has frequently relied on *Egelhoff* to uphold rulings limiting the introduction of relevant exculpatory evidence, including evidence of voluntary intoxication. *See, e.g.*, *Murray v. Schriro*, 746 F.3d 418, 451 (9th Cir. 2014) (citing *Egelhoff*, 518 U.S. at 51, 56, to show that "due process does not require the jury to be instructed regarding the defendant's intoxication at the time of the crime"); *Phillips v. Herndon*, 730 F.3d 773, 775 (9th Cir. 2013) (citing *Egelhoff*, 518 U.S. at 53, to show that States can limit the right to present a complete defense through the exclusion of relevant exculpatory evidence); *LaJoie v. Thompson*, 217 F.3d 663, 680 (9th Cir. 2000) ("[T]he Supreme Court has recognized 'the principle that the introduction of relevant evidence can be limited by the State for a valid reason.'" (Ferguson, J., dissenting) (quoting *Egelhoff*, 518 U.S. at 53)). The Ninth Circuit in *United States v. Sayetsitty* specifically noted that a person has "no Due Process right to a defense of voluntary intoxication if the legislature chooses to exclude it." 107 F.3d 1405, 1413 (9th Cir. 1997) (citing generally to *Egelhoff*). Based on the plurality's agreement with Justice Ginsberg's concurrence and subsequent Ninth Circuit case law, this Court concludes that Justice Ginsberg's concurring opinion in *Egelhoff* is clearly established federal law and, as such, is the appropriate lens through which to view this Petition.

For the reasons below, this Court finds the California Court of Appeal's decision was neither contrary to nor an unreasonable application of clearly established federal law.

As found by the California Court of Appeal, the "Montana law [is] substantially similar to former section 22" in several areas. (ECF 8-7 at 9.) First, like the statute in *Egelhoff*, which Justice Ginsberg found constitutional in part because it does not appear in the evidentiary code, former § 22(b) appears in the California Penal Code under the section entitled "Of Persons Liable to Punishment for Crime." *See* Cal. Penal Code § 22(b) (West 1995). Second, the very name of the section where one finds former § 22(b), "Of Persons Liable to Punishment for Crime," is analogous to the section where one finds the Montana statute in the Montana Code, under the heading of "General Principles of Liability." Third, former § 22(a), which is directly connected to former § 22(b), states, "No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his or her having been in that condition." Cal. Pen. Code § 22(a) (West 1995). This language is again directly analogous to the Montana statute, which states, "[A]n intoxicated condition is not a defense to any offense." Former § 22(a) continues, "Evidence of voluntary intoxication shall not be admitted to negate the capacity to form any mental states," Cal. Pen. Code § 22(a) (West 1995), which once again mirrors the Montana statute: "an intoxication condition . . . may not be taken into consideration in determining the existence of a mental state." As it relates to this Petition, former § 22(b)'s language has "no significant difference in wording" that would make it any "less tenable" than the Montana statute that Justice Ginsberg found constitutional, *Egelhoff*, 518 U.S. at 59–60, and Petitioner has failed to point to any language in former § 22(b) that would distinguish it from the Montana statute.

Former § 22(b)'s similarities to the Montana statute in *Egelhoff* indicate that, under clearly established federal law, the statute represents a permissible "legislative judgment" to redefine the *mens rea* element of general intent crimes in California. Former § 22(b) carves out a list of specific exceptions under which a California defendant can offer evidence of voluntary intoxication, a list that does not include implied malice. *See* Cal. Penal Code § 22(b) (West 1995) (authorizing evidence of voluntary intoxication to establish specific intent "or whether the defendant premeditated, deliberated, or harbored

*express* malice aforethought" (emphasis added)).  However, former § 22(b) does not impermissibly relieve a prosecutor from proving *mens rea* as it relates to implied malice. Rather, it "extracts the entire subject of voluntary intoxication from the mens rea inquiry" in the same manner as the Montana statute.  *Egelhoff*, 518 U.S. at 58.  Consequently, the prosecution must still prove *mens rea* as it relates to implied malice.

With respect to Petitioner's case, the California Court of Appeal specifically addressed whether former § 22(b) relieved the prosecutor from proving *mens rea*.  The court noted that the trial court provided the jury with a version of CALCRIM No. 520 as a jury instruction, which defined the implied malice standard as follows: "One, *intentionally* committed an act; two, the natural and probable consequences of the act were dangerous to human life; three, at the time he acted he *knew* his act was dangerous to human life; and, four, he *deliberately acted* with conscious disregard for human life." (ECF No. 8-7 at 5 (emphasis added).)  Thus, a California prosecutor must still prove a mental state, but, like a defendant under the Montana statute, a California defendant is not entitled to present evidence of voluntary intoxication for a general intent crime under former § 22(b). Petitioner's charges in the instant case were based on implied malice and general intent crimes (ECF No. 8-1 at 19–24), charges for which the legislature explicitly chose not to allow voluntary intoxication as a defense.  *See* Cal. Penal Code § 22(b) (West 1995). Contrasted with the defendant in *Sayetsitty*, whose conviction was reversed because the court did not allow him to present evidence of voluntary intoxication for a specific intent crime as authorized by the Arizona legislature,[8] Petitioner was not entitled to present exculpatory voluntary intoxication evidence.

---

[8] In *Sayetsitty*, the Arizona trial court did not allow the jury to consider evidence of voluntary intoxication as it related to aiding and abetting second degree murder. The court reasoned that because second degree murder was a general intent—as opposed to specific intent—crime, the defendant was not entitled to present evidence of voluntary intoxication. On appeal, the Ninth Circuit reversed, holding that aiding and abetting was a specific intent crime and thus the lower court erred by not allowing the defendant to present evidence of voluntary intoxication because it was specifically authorized by the legislature.

The California Court of Appeal, in its ruling on Petitioner's direct appeal, relied on Justice Ginsberg's concurring opinion and concluded that former § 22(b) is consistent with the Due Process Clause because it is not merely an evidentiary prescription but rather a constitutional redefinition of *mens rea*. (ECF No. 8-7 at 8–10.) The court first found that former § 22(b) is not an evidentiary prescription because it is located in the Penal Code "with statutes defining and setting forth the kinds and degrees of crimes and their punishment." (*Id.* at 9.) The court then found that "the first sentence of section 22 (now at subdivision(a)) has declared the policy of this state that an act is not less criminal because the actor committed it while voluntarily intoxicated." (*Id.* at 9–10.) Lastly, the court found that because implied malice was not one of the listed exceptions under former § 22(b), this represented a legislative judgment to exclude exculpatory voluntary intoxication evidence for implied malice. (*Id.* at 10.) These findings by the California Court of Appeal, as analyzed above, were consistent with Justice Ginsberg's concurring opinion in *Egelhoff*, and thus were consistent with clearly established federal law. As a result, this Court finds that the appellate court's holding was neither an unreasonable application of nor contrary to clearly established federal law.

The facts and holdings of the Petitioner's case before the California Court of Appeal—as they related to the statutory exclusion of exculpatory voluntary intoxication evidence—were fundamentally identical to those in *Egelhoff*. Further, the California Court of Appeal relied on Justice Ginsberg's conclusion concerning the Montana statute in *Egelhoff* to similarly conclude that § 22(b) constitutionally redefines *mens rea*. This Court would be hard pressed to find that the California Court of Appeal unreasonably applied clearly established law, much less that the ruling was "diametrically opposed" to clearly established federal law.

///

///

///

///

## VI. CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **September 9, 2016**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **September 16, 2016**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated:  August 19, 2016

Hon. Jill L. Burkhardt
United States Magistrate Judge